SMITH, Receiver, etc., v. LEE.

*(District Court, N. D. New York. 1882.)*

ARREST AND BAIL—REDUCTION OF BAIL.

> A party arrested in a civil action for damages for the wrongful conversion of the moneys and credits of a bank while acting as its president, and held to bail in a large amount, where it is shown that he has been tried on a criminal charge connected with the same transaction, and the jury disagreed; and where he is already held to bail on other charges growing out of the same transactions, and where he has made an assignment of all his property for the benefit of creditors,—is entitled to a reduction on the amount of bail.

*Morey & Inglehart,* for motion.

*Crowley & Movious,* opposed.

COXE, D. J. This is a motion to reduce bail. The action is by the receiver of the First National Bank of Buffalo to recover damages for the alleged wrongful conversion of the money and credits of the bank by the defendant while acting as its president.

The papers used on the original application were the complaint and affidavit of Linus M. Price, a bank examiner, stating in detail the transactions with Herman J. Hall and others, in which it is insisted that property to a large amount was fraudulently abstracted and embezzled.

It also appeared that the defendant had executed a conveyance of the greater part of his real property to one George Howard, to indemnify him against loss as bondsman; and that the defendant was possessed of valuable personal property, which he was endeavoring to secrete and dispose of with the intent to defraud his creditors. The latter allegation is on information and belief. There were also two brief confirmatory affidavits. Upon these papers, presented *ex parte* to the circuit judge, the defendant was, on the sixteenth day of May, 1882, held to bail in the sum of $100,000, the condition being that he should render himself amenable to any mandate on final judgment. Since that time events have greatly modified the circumstances in which bail in a sum so large was required. The defendant afterwards interposed an answer, in which he denies on oath all the material allegations of the complaint. He admits, in an affidavit read on this motion, the transfer of his real estate to indemnify his bondsmen in the criminal proceedings, but he insists that the time for which his bondsmen were bound having expired, the title reverts, and the property conveyed is now applicable to the payment of his debts.

It further appears that the defendant has made a general assignment for the benefit of creditors, without preferences. In the schedules filed by his assignee the property is estimated at $35,000.

The affidavit also states that, with the exception of the property so assigned, he has nothing whatever with which to pay any judgment that may be awarded against him; that from the day the bank suspended—April 14, 1882—until May 18th, the date of the arrest in this action, he was, with the exception of one day, at large in the city of Buffalo, making no attempt to depart; that he has now no property to offer as security, and it will be absolutely impossible for him to procure bail unless the same be mitigated; that if reduced to a nominal sum in this action, it may be possible, through his friends, to secure bail in the criminal actions to the amount of $15,000.

This affidavit, in so far as it relates to the general assignment, the value of the defendant's property, and his fruitless efforts to obtain bail, is fortified by an accompanying affidavit of Mr. Inglehart, the attorney who drew the assignment. Neither affidavit, in its essential particulars, is disputed. But time has given the defendant another cogent argument. He has been indicted for embezzlement, abstraction, and willful misapplication of the funds of the bank, and tried, at his own request, at the same term at which the indictment was found. The trial occupied four days, and involved an investigation of the identical transactions referred to in the complaint and affidavits. No evidence offered to establish guilt was excluded; the prosecution was conducted with much ability and zeal; and yet the trial resulted in a disagreement of the jury—a jury composed of men of standing and discernment. A large majority of the jury is understood to have favored acquittal.

These are facts which the court has no right to ignore. To assert that they do not greatly lessen the chances that the defendant will abscond would not be warrantable. Had the verdict been one of acquittal, the reason for the modification of the order of May 16th would have been obvious to the most unobserving. In a less degree, the disagreement of a jury, impaneled to pass upon the guilt or innocence of an accused person, has from time immemorial been recognized as a sufficient and an imperative reason for the reduction of bail. So familiar and universal is this rule that hardly an instance can be cited in which the court has disregarded it. This defendant is entitled to the same consideration that other parties charged with crime receive; no more and no less. It would be an abuse of power for the court, after such a result,—whatever its own views of the mer-

its may be,—to treat the defendant like a proven criminal, and, by allowing the bail to remain at a sum which it is conceded he cannot give, compel him to continue in hopeless imprisonment.

In civil actions the sole object of arrest and bail is to secure the presence of the defendant where final process issues. The abolition of statutes which tolerated imprisonment for debt has given a direction to jurisprudence, in all kindred regards, opposed to oppressive measures and enactments. It is now well settled that the court has no right to fix bail at a sum so large as intentionally to oppress the defendant and prevent his release.

In view of the result of the recent trial, and in view of the further facts that the defendant is now under bonds on pending indictments in the sum of $10,000; that he has executed a general assignment; that a great part of his property consists of real estate situated in Buffalo; and that the papers contain no averment that he intends to abscond,—it is thought that to require the additional sum of $100,000 is unreasonable. It would seem to be directly within the prohibition of the constitution of the United States that "excessive bail shall not be required." Few men, even in official or business transactions, where no crime is alleged, or accusation made, can command friends wealthy enough, or numerous enough, to justify in such an amount. When crime is charged suspicion is aroused, and the difficulty proportionately increased. A reasonable opportunity to secure his liberty, pending trial, should be afforded the defendant, if it can be given without endangering the rights of the plaintiff.

The papers submitted on this motion have been carefully examined; and after consideration of all the facts presented, and consultation with the circuit judge who signed the original order, it is thought that the order should be modified by reducing the bail to the sum of $25,000.